IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAYMOND RODRIGUEZ,

    Plaintiff,

vs.                                      CASE NO.: 8:22-cv-02101-KKM-AAS

CITY OF GULFPORT,

    Defendant.
_____/

**DEFENDANT'S, CITY OF GULFPORT,
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT AND MEMORANDUM OF LAW**

COMES NOW Defendant, CITY OF GULFPORT, by and through its undersigned counsel, pursuant to Local Rule 3.10 and Rules 12(b), F.R.Civ.P., and moves this Honorable Court to strike portions of the Complaint, and to dismiss Plaintiff's Complaint [Doc. 35] for failure to state a claim upon which relief may be granted.

**STATEMENT OF THE CASE**

1.    On or about **September 11, 2022**, Plaintiff initiated this civil action via his first COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES [Doc. 1] (hereinafter "COMPLAINT [Doc. 1]") in this Honorable Court under Case No.: **8:22-cv-02101-KKM-AAS**, which was assigned to the Honorable District Court Judge Katheryn Kimball Mizelle.

1

2. The "COMPLAINT [Doc. 1]" was the first occasion when Constitutional issues and/or federal questions of any nature whatsoever have been alleged. Service of process[1] was effected upon the "CITY OF GULFPORT" on or about **October 9, 2009.**

3. On **October 31, 2022**, Defendant, "CITY OF GULFPORT" filed its MOTION TO DISMISS/MOTION FOR A MORE DEFINITE STATEMENT [Doc. 12] in response to the "COMPLAINT [Doc. 1]".

4. On **November 21, 2022**, Plaintiff filed his FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES [Doc. 17] (herein after "AMENDED COMPLAINT [Doc. 17]") with this Honorable Court.

5. On **November 21, 2022**, Plaintiff filed his PLAINTIFF'S UNOPPOSED MOTION TO AMEND CASE CAPTION [Doc. 18] to correct/change the named Defendant, TOWN OF GULFPORT to CITY OF GULFPORT.

6. On **November 21, 2022**, this Honorable Court *granted* Plaintiff's "MOTION [Doc. 18]" and further Ordered that Defendant's MOTION TO DISMISS/MOTION FOR A MORE DEFINITE STATEMENT [Doc. 12] *was moot* and that Defendant may refile or otherwise respond by November 30, 2022.

7. On **May 17, 2023**, this Honorable Court dismissed Plaintiff's Amended Complaint [Doc. 17] and denied the City's Motion to Dismiss [Doc. 23] as moot;

---

[1] SUMMONS [Doc. 11].

furthermore, the Court granted leave for Plaintiff to file a second amended complaint by May 26, 2023.

8.   Herein Defendant, CITY OF GULFPORT, responds to Plaintiff's "SECOND AMENDED COMPLAINT [Doc. 35]" with this its Motion to Dismiss.

## STANDARD OF REVIEW

It is well established that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting F.R.Civ.P. 8)). While a complaint "does not require 'detailed factual allegations,' ... it demands more than an unadorned, 'the-defendant-unlawfully-harmed-me' accusation." *Id.* at 1949 (quoting *Twombly,* 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 129 S.Ct. at 1950 (*citing Twombly,* 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* at 1949 (*citing Twombly,* 550 U.S. at 556).

"The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.,* 578 F.3d 1252, 1261 (11th Cir. 2009) (*citing Iqbal,* 129 S.Ct. at 1949). When reviewing a motion to dismiss, a court shall construe the complaint in the light most favorable to the plaintiff and take the factual allegations set forth therein and all reasonable inferences drawn therefrom as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997); *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir. 1994). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.; see also Sinaltrainal,* 578 F.3d at 1260 ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.").

A court may consider "documents incorporated into the complaint by reference" when deciding a Rule 12(b)(6) motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court ruling on a motion to dismiss under Rule 12(b)(6) may "consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009) (quotation marks omitted). This includes matters of public record, such as

"documents from prior state court adjudications." *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008). "To the extent the plaintiffs' allegations of what happened in those proceedings are at odds with the records, moreover, the court is not required to accept the plaintiffs' version." *Katz v. McVeigh*, 931 F.Supp.3d 311, 320 (D.N.H.2013) (*citing*, *Rederford*, 589 F.3d at 35 n. 4 (noting that, even in ruling on motions to dismiss, "courts need not accept facts which have since been conclusively contradicted").

## ARGUMENT AND MEMORANDUM OF LAW

Plaintiff's claims against Defendant are alleged to arise of out his trespass warnings issued pursuant to the City's Trespass Policy. Plaintiff's claims assert that the City's Trespass Policy: (1) violates his substantive due process rights (Counts I-III); (2) violates his procedural due process rights (Counts IV-VI); and (3) is void for vagueness (Count VII). Plaintiff further seeks declaratory and injunctive relief related to the City's Trespass Policy (Counts IX and XI). Lastly, Plaintiff claims that the City's "Cease and Desist Demand" constitutes a restraint on free speech (Counts VIII and X). For the reasons set forth herein, Plaintiff's claims against the City fail to state a cause of action and should be dismissed.

I. **THE CITY'S TRESPASS POLICY DOES NOT VIOLATE RODRIGUEZ'S SUBSTANTIVE DUE PROCESS RIGHTS.**

In his Second Amended Complaint, Plaintiff asserts that the City's Trespass Policy violated his rights to substantive due process under the Fourteenth. *See* U.S. Const. amend XIV ("No State shall ... deprive any person of life, liberty, or property, without due process of law...."). "[C]onduct by a government actor will rise to the

level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir.2003).

In the context of this case, Plaintiff's fail because the City's Trespass Policy furthers a recognized public purpose; that is, preventing an individual's conduct that either has caused, or is likely to cause, a disruption of services or put the safety of staff or the public at risk. "The Government, like any private landowner, may preserve the property under its control for the use to which it is lawfully dedicated." *Sentinel Commc'ns Co. v. Watts*, 936 F.2d 1189, 1201 (11th Cir. 1991). Similarly, the government "workplace, like any place of employment, exists to accomplish the business of the employer." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 805, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). "It follows that the Government has the right to exercise control over access to the [government] workplace in order to avoid interruptions to the performance of the duties of its employees." *Id.* at 805-06, 105 S.Ct. 3439." "…[A]s the United States Supreme Court acknowledged in *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), this ***public access may be expressly limited to the extent necessary for the orderly functioning of the public facility***." (Emphasis added).

Given this precedent, the Court should conclude that the City's Trespass Policy is neither wholly irrational nor arbitrary. An ordinance violates the Due Process Clause's prohibition on "arbitrary" government action only if it lacks a "substantial

6

relation to the public health, safety, morals, or general welfare." See *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926).

Contrary to Plaintiff's claims, the fact that the public will benefit from the City's regulation strongly indicates that the City has a sufficiently rational basis for performing it. Consequently, the Court should reject Plaintiff's substantive due process claims and dismiss Counts I-III with prejudice.

## II.   THE CITY'S TRESPASS POLICY IS PROCEDURALLY SUFFICIENT.

A Section 1983 procedural due process claim requires a plaintiff to prove three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

"Plaintiffs have a constitutionally protected liberty interest to be in parks or other city lands of their choosing that are open to the public generally." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). The right may extend to City Hall and, perhaps even the Gulfport Marina and Gulfport Casino. *Cuellar v. Bernard*, No. SA-13-CV-91-XR, 2013 WL 1290215, at *4-5 (W.D. Tex. Mar. 27, 2013). The right, nevertheless, "is not absolute." *Catron*, 658 F.3d at 1267 n.5. For example, there is no "constitutional right to use public parks under all conditions and at all times." *Id.*; *see also Banuelos v. Martinez*, No. 1:15-cv-00010-AWI-GSA, 2015 WL 3660261, at *3 (E.D. Cal. June 11, 2015) ("Plaintiff does not enjoy a liberty interest to enter into any state office without restriction."). Further, "a person may forfeit this liberty right

by trespass or other violation of law." *Catron*, 658 F.3d at 1266; *Occupy Fort Myers v. City of Fort Myers*, 882 F. Supp. 2d 1320, 1338-39 (M.D Fla. 2011).

Under the City's Trespass Policy, when a person causes a disruption of services or puts the safety of staff or the public at risk, that person is no longer at the City's facilities on legitimate City business; accordingly, City personnel are empowered to issues trespass warnings. See [Doc. 35, ¶ 10]. As such, the person forfeits any liberty interest in visiting City facilities, such as City Hall, Gulfport Marina or the Gulfport Casino, *see Catron*, 658 F.3d at 1266, and the City can restrict access to those facilities "without impacting constitutionally-protected liberty interests," *see Harrison v. Palmer*, No. 4:13cv131-WS, 2014 WL 11412696, at *4 (N.D. Fla. Nov. 5, 2014) (collecting cases). Though the Gulfport Marina and Casino are government buildings, like City Hall, the public has no constitutional right to visit City Hall "under all conditions and at all times." *See Catron*, 658 F.3d at 1267 n.5. The government is empowered control its property "for the use to which it is lawfully dedicated." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129-30, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981) (citation omitted). The City has a recognized and legitimate interest in enacting policies to promote sanitation, public health, safety and aesthetics of its public property. *Joel v. City of Orlando*, 323 F.3d 1353, 1358 (11th Cir. 2000). Consequently, the City can exclude people causing disruptions with a geographically-limited trespass warning without violating a protected liberty interest. *See Harrison*, 2014 WL 11412696, at *4 (holding a citizen did not have a liberty interest to visit a state agency's office and the issued trespass warnings were not due process violations).

Moreover, Plaintiff must show "not only a constitutionally-protected [liberty] interest, but also a governmental deprivation of that constitutionally-protected [liberty] interest." *Arrington v. Helms*, 438 F.3d 1336, 1348 (11th Cir. 2006). Here, Plaintiff's claim fails because, if a person forfeits the asserted liberty interest, then there has been no deprivation. *See Occupy Fort Myers*, 882 F. Supp. 2d at 1338-29 (holding there was no likelihood of success on the merits where there was no liberty interest in plaintiffs' use of the park).

A person that causes a disruption of services or puts the safety of staff or the public at risk is not using the City's facilities under ordinary conditions or for their intended purposes. The park in *Catron* was open to the public generally, and the trespass ordinance prevented plaintiffs' ordinary use of the park. 658 F.3d at 1266-67. In *Catron*, the Eleventh Circuit stated the due process rights at issue were to use the "parks under the ordinary conditions in which these parks are made available to the general public." *Id*. at 1267 n.5. Here, Plaintiff does not allege that the City's facilities at issue are open to the public; however, even if the facilities are open to the general public, Plaintiff ignores that they would be open to the public to conduct legitimate City business and the City may limit the use of its properties to ordinary conditions for its intended purpose. *See id.*; *Occupy Fort Myers*, 882 F. Supp. 2d at 1338-39 (holding no liberty interest exits permitting protests in a public park in any way or at any time); *Woodbury v. City of Tampa Police Dep't*, No. 8:10-CV-0772-T-30AEP, 2010 WL 2557677, at *1-2 (M.D. Fla. June 8, 2010) (holding a parent did not have a liberty interest to visit their child's school and that a school district could indefinitely bar the

9

parent's access to school "to maintain order and prevent disruptions"), *report and recommendation adopted* 2010 WL 2557534 (June 23, 2010).

In sum, neither RODRIGUEZ nor any other person has an absolute right to visit City Hall. Where the City limits the use of its facilities based on a violation of the Trespass Policy, it does not violate liberty interests. *See Vincent v. City of Sulphur*, 805 F.3d 543, 548 (5th Cir. 2015) (holding a plaintiff "under investigation for threatening deadly violence against city officials" did not have a clearly established "right to notice and a hearing before being banned from entering city buildings").

As such, the Court should dismiss Plaintiff's procedural due process claims and dismiss Counts IV-VI with prejudice.

## III.  THE CITY'S TRESPASS POLICY IS NOT VAGUE.

Under long-established due-process principles, a law or regulation is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Unconstitutionally vague laws or regulations fail to provide "fair warning" of what is required, and they consequently encourage its "arbitrary and discriminatory enforcement" by giving government officials the sole ability to interpret the scope of the law. *Id*. at 108–09, 92 S.Ct. 2294. To thwart these problems, the concept of due process "insist[s] that laws give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id*. at 108, 92 S.Ct. 2294. The courts do not "expect mathematical certainty from our language." *Id*. at 110, 92 S.Ct. 2294.

Here, Plaintiff asserts that "[n]o standards are established to guide authorized employees in determining whether an individual 'has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk.'" Doc. 35, ¶ 124. To the contrary, the conduct prohibited by the City's Trespass Policy is the very sort of conduct that has been criminalized both by the state of Florida and the City's Code of Ordinances. *See, e.g.*, §§ 836.04 (Defamation), 836.05 (Threats; extortion), 836.12 (Threats), Fla. Stat.,; *see also, e.g.*, Gulfport, Fla., Code of Ordinances §§ 14-1 (Abusive or obscene language), 14-5 (Assault and battery), 14-19 (Disorderly conduct), 14-19 (Disturbing lawful assembly). Furthermore, "…as the United States Supreme Court acknowledged in *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), this ***public access may be expressly limited to the extent necessary for the orderly functioning of the public facility***." (Emphasis added).

Additionally, the phrase "has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk" is not unconstitutionally vague. A person of normal intelligence understands what these terms mean. What is more, the "vagueness" alleged here is no more vague than the Trenton, New Jersey, ordinance in *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949), which prohibited "loud and raucous noises." The Supreme Court upheld that ordinance and in doing so, it explained, though the words "loud and raucous" "are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." *Id*. at 79, 69 S.Ct. 448. So too is

11

has caused or is likely to cause a disruption of services or put the safety of staff or the public at risk."

Accordingly, Count VII of the Second Amended Complaint should be dismissed with prejudice.

### IV. PLAINTIFF'S FIRST AMENDMENT CLAIMS FAIL.

To the extent that the City's "Cease and Desist Demand" directed to Plaintiff imposes any restriction on Plaintiff, any restrictions imposed are content neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication. As such, Plaintiff's First Amendment claims (Counts VIII & X) should be dismissed.

The "Cease and Desist Demand" [Doc. 35-2, p. 31-33], informs Plaintiff that has engaged in "aggressive, threatening, harassing and intimidating manner towards employees of the City of Gulfport" and that he has "attended several City Council meetings and exhibited a lack of decorum." It further informs Plaintiff that "[t]he safety of the City's employees and elected officials is paramount." *Id*. Accordingly, Plaintiff was warned to "Cease and Desist from [his] belligerent actions noted above." *Id*. Lastly, the City affirms its commitment "to continue to adhere to and protect all individuals' rights of freedom of speech and expression[,]" including those rights afforded to Plaintiff.

The speech protected by the First Amendment does not guarantee persons the right to communicate their views at all times or in any manner desired. *Cleveland v.*

*City of Cocoa Beach*, 221 Fed. Appx. 875, 877-78 (11th Cir. 2007) (citing *Rowe v. City of Cocoa*, 358 F. 3d 800, 802 (11th Cir. 2004)).

Even in a public forum, the government may impose restrictions, provided the restrictions are content neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Thomas v. Howze*, 348 Fed. Appx. 474, 477 (11th Cir. 2009). The regulation will not be invalid simply because there is some less-restrictive alternative. *Ward*, 491 U.S. at 800. Courts must not second guess responsible decisions concerning the appropriate method for promoting a significant government interest. *Id*. Because the City's "Cease and Desist Demand" meets all of the requirements of a constitutional restriction in a public forum, dismissal of Counts VIII and X is appropriate.

First, false statements are not entitled to the same level of First Amendment protection as truthful statements. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 94 S.Ct. 2997 3007, 41 L.Ed.2d 789 (1974)). And more poignantly for the Court's consideration of the "Cease and Desist Demand," the law is clear in that threatening speech can be criminalized. *See Virginia v. Black*, 538 U.S. 343, 359 (2003); *see, e.g.*, §§ 836.04 (Defamation), 836.05 (Threats; extortion), 836.12 (Threats), Fla. Stat.,; *see also, e.g.*, Gulfport, Fla., Code of Ordinances §§ 14-1 (Abusive or obscene language), 14-5 (Assault and battery), 14-19 (Disorderly conduct).

It is apparent from a review if the "Cease and Desist Demand" that it is the City's attempt to impose content neutral and narrowly tailored restrictions on speech

13

or conduct that is criminal in nature. It is similarly apparent that, in doing so, the City seeks to serve a significant government interest; that is, to assure the safety of the City's employees and elected officials. Lastly, the "Cease and Desist Demand" does not foreclose any channels for communication as the "Cease and Desist Demand" leaves open all channels of communication since it continues to adhere to and protect all individuals' rights of freedom of speech and expression, including those of Plaintiff, with no restriction at a given place and time. The First Amendment requires only that the City leave open an alternative channel of communication, not the alternative channel of communication Plaintiff prefers. *Camp v. City of Atlanta*, 451 F.3d 1257, 1282 (11th Cir. 2006).

Moreover, it is axiomatic that "…**the first amendment** does not automatically bestow access to property simply because it is owned or controlled by the government." *United States Postal Service v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981) (emphasis added). Also, "The Government, like any private landowner, may preserve the property under its control for the use to which it is lawfully dedicated." *Sentinel Commc'ns Co. v. Watts*, 936 F.2d 1189, 1201 (11th Cir. 1991). Similarly, the government "workplace, like any place of employment, exists to accomplish the business of the employer." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 805, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). "It follows that the Government has the right to exercise control over access to the [government] workplace in order to avoid interruptions to the performance of the

duties of its employees." *Id.* at 805-06, 105 S.Ct. 3439." "…[A]s the United States Supreme Court acknowledged in *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), this **public access may be expressly limited to the extent necessary for the orderly functioning of the public facility**." (Emphasis added).

As such, dismissal of Counts VIII and X with prejudice is appropriate.

**V.    INJUNCTIVE / DECLARATORY RELIEF IS PREMATURE.**

RODRIGUEZ requests *Injunctive* and/or *Declaratory* Relief on subject matters that are not yet ripe for this Court since Plaintiff has **not**, by his own admissions yet availed himself of what he refers to as the City's *policy* on *Trespass Warnings* and the *Appeal Process* thereof as shown to this Court at the bottom[2] of Plaintiff's Exhibit "8" to "SECOND AMENDED COMPLAINT [Doc. 35-8]." Moreover, in the "SECOND AMENDED COMPLAINT [Doc. 35]", RODRIGUEZ makes it very clear that, *notwithstanding* his own verbally abusive conduct and admittedly *pushing a door through the drywall* of City Hall (damaging City Hall and being arrested for that action[3]), he *apparently* does not intend to avail himself of the stated *Appeal Process*, because *"GULFPORT has not enacted any procedures or criteria by which the City Manager conducts such an appeal, which in this case would be an appeal to the City Manager of the City Manager's own decision."* [Doc. 35, ¶ 77].  Nor does it appear that RODRIGUEZ intends

---

[2]    *See* ¶ 76 ("[t]respass warnings issued for city property may be appealed to the City Manager's office, 727-893-1009.")

[3]    *See* Arrest Report at Exhibit "9" of the "COMPLAINT [Doc. 1-9]".

15

to avail himself of available *appeals* to the City Attorney's Office,[4] or by *appealing* to the City's Harbor Master, as suggested by Gulfport Police Commander Mary Farrand's direction to *work it out* with the Harbor Master and have *him "rescind"* the Trespass Warnings, let alone Police Commander Mary Farrand's own overtures to assist RODRIGUEZ[5] by sitting down with him and the *Harbor Master* to work things out. Apparently, Plaintiff would prefer skip these *appeals* and have this Honorable Court intervene on his behalf. All of which *assumes*, that the City *is required* have a *process* by which there is an *appeal* of the City Manager's decision beyond the City Manager, despite the fact that the City Manager is *the final-decision maker* for the CITY OF GULFPORT on a day-to-day basis, *sans* decisions of the City Council, the *legal* proof of which is absent and the City would argue, such a legal requirement of such an *appeal* just does not exist.

As in the case of *City of Los Angeles v. Lyons*, 103 S.Ct. 1660 (1983), RODRIGUEZ has "*failed, moreover to establish the basic requirements of the issuance of equitable relief in these circumstances—the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies as law.*" *Id.* at 1666. Also, as the 11th Circuit *held* in case of *Kerr v. City of West Palm Beach*, 875 F.2d 1546 (11th Cir. 1989), notwithstanding alleged K9 behavior in that case, the Court *affirmed* the district court's holding that "Kerr" lacked *standing*:

---

[4] *See* Exhibit "6" as attached to and thereby incorporated into the "SECOND AMENDED COMPLAINT [Doc. 35-6]".
[5] *Id.*

16

> "…the Department's policy does not *require* its officers to act unconstitutionally. Under both *Garner* and *Lyons,* **such general policies are not unconstitutional on their face**; appellants therefore have no standing to seek injunctive or declaratory relief against the policy's continued usage. *See generally Mitchell v. City of Sapulpa,* 857 F.2d 713, 720 (10th Cir.1988) (Plaintiff, who was unlawfully seized pursuant to an Oklahoma statute that ostensibly violated the dictates of *Garner*, had no standing under *Lyons* to seek a declaratory judgment as to the statute's constitutionality.). (emphasis added).

Similarly, in this instant case, the City's *policy* is not unconstitutional on its face and as such RODRIGUEZ's request for *Injunction* and *Declaratory Relief* are at best "hypothetical" and he has not shown any reason to believe there will be anymore contact between him and the CITY OF GULFPORT (assuming that he does not violate the in force *Trespass Warnings, Court Injunctions,* and/or avails himself of the *Appeal Process*, *to wit*: *Appeals* to the City Manager of the CITY OF GULFPORT[6] and/or contacts the City Attorney to further discuss the situation of the "Cease and Desist" request by the City and offered by the City Attorney[7] or endeavors to have the Harbor Master *rescind* the Trespass Warnings).

To the extent that the *Injunctive / Declaratory Relief* pertains to the ***arrest*** of RODRIGUEZ on August 2, 2022,[8] such *relief* is again not ripe and obviated or made

---

[6] Despite RODRIGUEZ's apparent belief of the futility of such *Appeal.*
[7] *See* "SECOND AMENDED COMPLAINT [Doc. 35-2]" at Exhibit "2."
[8] *See* Arrest Report at Exhibit "9" of the "COMPLAINT [Doc. 1-9]".

17

premature by the on-going Criminal Prosecution of RODRIGUEZ by the State of Florida,[9] as the Supreme Court held in *Wallace v. Kato,* 549 U.S. 384, 393-394 (2007):

> We are not disposed to embrace this bizarre extension of *Heck.* If a plaintiff **files a false-arrest claim before he has been convicted** (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord *394 with **common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended**. See *id.,* at 487-488, n. 8, 114 S.Ct. 2364 (noting that **"*abstention* may be an appropriate response to the parallel state-court proceedings");** *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 730, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit. *Edwards v. Balisok,* 520 U.S. 641, 649, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Heck,* 512 U.S., at 487, 114 S.Ct. 2364. (emphasis added).

As indicated in the attached State of Florida Criminal Docket,[10] RODRIGUEZ is under on-going Criminal Prosecution and the Criminal Docket notes *adversarial procedures/hearings* wherein the state court judge has *found Probable Cause* for RODRIGUEZ's Arrest for *Criminal Mischief* in violation of Florida Statute 806.13(1)(b)(2).[11] Such a *Probable Cause* determination by the criminal court in an adversarial hearing could bar suit in state civil court,[12] but is obviously *a matter of law* for determination by this Honorable Court.

---

[9]     *See* attached Defense Exhibit "A" / Current Docket of *State of Florida v. Rodriguez*, Uniform Case # 522022MM010304000APC.

[10]    *Id*.
[11]    *See* Arrest Report at Exhibit "9" of the "COMPLAINT [Doc. 1-9]".
[12]    *See Harris v. Boone*, 519 So.2d 1065, 1067-68 (Fla. 1st DCA 1988).

18

Lastly, Plaintiff has not, and cannot, establish that the granting the relief sought would not disserve the public interest. *See Church v. City of Huntsville*, 30 F.3d 1332 at 1345 (11th Cir. 1994). Accordingly, the relief sought in Counts IX-XI should be denied and those counts should be dismissed with prejudice.

WHEREFORE, Defendant, CITY OF GULFPORT, *a Municipal Corporation of the State of Florida*, respectfully requests that this Honorable Court grant Defendant's, CITY OF GULFPORT, Motion to Dismiss.

Respectfully submitted this 12th day of June, 2023.

**DAYES LAW FIRM**
727 2nd Street South
Safety Harbor, Florida 34695
Telephone: 727.240.1332
Facsimile: 727.440.8188
Email: aid@dayeslaw.com
Counsel for Defendant

By: */s/ Andrew I. Dayes*
**ANDREW I. DAYES, ESQUIRE**
Florida Bar Number: 619116

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Defendant, CITY OF GULFPORT, certifies that he has conferred with Counsel for Plaintiff, RAYMOND RODRIGUEZ, by email and the motion is opposed.

By: */s/ Andrew I. Dayes*
**ANDREW I. DAYES, ESQUIRE**
Florida Bar Number: 619116

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of June, 2023, I electronically submitted the foregoing with the Clerk of Court using the CM/ECF system, who will send electronic notice to all parties and pro se litigants.

By: */s/ Andrew I. Dayes*
**ANDREW I. DAYES, ESQUIRE**
Florida Bar Number: 619116